IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2020

**RAYMOND WATISON v. STATE OF TENNESSEE**

**Appeal from Criminal Court for Shelby County**
**No. 16-04907   James M. Lammey, Judge**

———————————————————

**No. W2019-01650-CCA-R3-ECN**

———————————————————

Raymond Watison, Petitioner, filed a Petition for Writ of Error Coram Nobis ("the Petition"), claiming newly discovered evidence.  The State moved to dismiss the Petition. The trial court found that the Petition failed to state a colorable claim and that it was not timely filed and summarily dismissed the Petition.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Raymond Watison, Clifton, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ryan Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**Factual and Procedural Background**

In 2018, a Shelby County jury convicted Petitioner of first degree premeditated murder.  Petitioner's motion for new trial was denied by an order entered on March 20, 2018.  On direct appeal, this court affirmed the judgment.  *State v. Raymond Watison*, No. W2018-00552-CCA-R3-CD, 2019 WL 4165282, at *1 (Tenn. Crim. App. Aug. 30, 2019), *perm. app. denied* (Tenn. Jan. 17, 2020).

The following summary of the facts is derived from this court's opinion from the direct appeal.  A couple of weeks before the murder, Petitioner was involved in a "beef" with the mentally ill victim over "some pizza or something."  *Id*.  On the day of the murder, Petitioner and his girlfriend, Tierra Patterson, drove in Ms. Patterson's Cadillac to Petitioner's mother's home.  *Id*.  Ms. Patterson went inside the home while Petitioner

"went inside a nearby house." *Id*. Ms. Patterson returned to her car before Petitioner. When Petitioner returned to the car, he was carrying "a shotgun wrapped in blue tape." *Id*. at *2. They drove to Petitioner's cousin's home, and Ms. Patterson overheard Petitioner discussing murdering someone with his cousin. *Id*. Ms. Patterson asked Petitioner to drive her home. *Id*. As they drove toward Ms. Patterson's residence, Petitioner said, "[T]here he go right there." *Id*. Petitioner turned the car around and parked near an abandoned house. *Id*. Petitioner got out of the car with the shotgun, and Ms. Patterson heard two gunshots. *Id*.

In his first statement to police, Petitioner claimed that a man named "Hurt" shot the victim. *Id*. at *5. After Ms. Patterson's statement did not match Petitioner's statement, Detective Maranda Jones conducted a second interview of Petitioner. *Id*. In his second statement, Petitioner said that he saw

> this dude with all black walking on the right side of the street. As he was merging off the bush tree, it looked like he was reaching for something from the right side and I thought it was a gun. He went back into the bushes and I stopped the car and let [Ms. Patterson's] window down and I told dude to stop playing with guns. I said stop playing with guns. I'm going to teach you a lesson.

*Id*.

Detective Jones testified that Petitioner stated that the victim "flashed a gun out," so the Petitioner got out of the car and told the victim to go home. Petitioner said "that the victim] wouldn't listen and go home and kept running off at the mouth." *Id*. Petitioner said that, at that point, he "let that one shot off, but . . . didn't aim it at him." *Id*. Petitioner then got back into the car, instructed Ms. Patterson to "pull off and meet me around the corner." *Id*. She did so, and Petitioner said he "fired the second shot and hit him." *Id*. Petitioner insisted that, despite having blown away half of the victim's face, he only intended to scare the victim. *Id*.

The victim was shot twice at close range with the same 12-gauge shotgun later recovered from Ms. Patterson's car. *Id*. at *16. Petitioner admitted to police that he shot the victim twice because he wanted to teach the victim a lesson. *Id*.

Petitioner was sentenced to life.

**Petition for Writ of Error Coram Nobis**

On June 14, 2019, Petitioner filed a Petition for Writ of Error Coram Nobis claiming that he obtained newly discovered evidence that Ms. Patterson gave false testimony at trial by denying that she had been promised anything by the State in

2

exchange for her testimony, that the State lied by denying the existence of an agreement with Ms. Patterson, and that the State knowingly presented Ms. Patterson's false testimony. Petitioner claimed that, if he had known at trial of the State's "deal" with Ms. Patterson, he could have used that information to impeach Ms. Patterson's credibility and that it would have resulted in a different judgment. Petitioner claimed that he first learned of the deal on June 4, 2019, when he received a copy of the transcript of Ms. Patterson's plea submission hearing.

In support of the Petition, Petitioner attached as Exhibit C a "Motion for Disclosure of Impeaching Information" filed by his trial counsel on September 8, 2018, and as Exhibit D, a copy of a pro se "Motion to Compel Disclosure of Existence and Substance of Promises of Immunity, Leniency or Preferred Treatment" dated May 5, 2017. Both motions sought information concerning any agreement or deal Ms. Patterson or any other witness had with the State. On June 7, 2017, the State filed a response to the pro se motion, stating:

> At present, there are no other agreements with any potential witnesses. The State realizes its continuing obligation to advise counsel if agreements are entered into between the State and any potential witnesses.

A copy of a partial transcript of Ms. Patterson's trial testimony was attached to the Petition as Appendix A. The following dialogue is from the "reredirect" examination of Ms. Patterson:

> Q. STATE: Ms. Patterson, has anybody promised you anything –
>
> A. MS. PATTERSON: No.
>
> Q. STATE: -- for your testimony?
>
> A. MS. PATTERSON: No.
>
> Q. STATE: A deal or anything like that?
>
> A. MS. PATTERSON: No.
>
> Q. STATE: And you didn't testify in General Sessions because you testified that the court - - the Judge was sick, right?
>
> A. MS. PATTERSON: Yes.
>
> Q. STATE: Okay. But no threats or promises have been made to you?

A. MS. PATTERSON:  No.

Ms. Patterson entered a plea of guilty six days after the trial court denied Petitioner's motion for new trial.  A copy of the transcript of Ms. Patterson's March 26, 2018 guilty plea submission hearing was attached to the Petition as Appendix B.  The hearing began with the following announcement:

> The State is agreeing to upfront diversion for a period of 11 months and 29 days, I believe to be monitored by Probation Works.  The end of diversion date, Your Honor, is 3/25 of 2019.

> If this matter had proceeded to trial, the State's proof would have been that on June 1, 2016, Ms. Patterson assisted [Petitioner], who was convicted after a jury trial of first-degree murder.  She assisted him in leaving the scene of the murder by transporting the evidence from the scene.

After being advised of her rights and acknowledging the factual basis for her plea, Ms. Patterson pled guilty to "criminal attempt accessory after the fact" and was sentenced in accordance with the terms of the plea agreement.

## State's Motion to Dismiss Petition

The State filed a motion seeking summary dismissal of the Petition, which stated in pertinent part:

> The State submits [P]etitioner offers no affidavit from the witness or any other proof whatsoever to support his assertion that the witness testified falsely at trial.  Moreover, even assuming the guilty plea of his co-defendant constituted newly discovered evidence which could support his petition for a writ of error coram nobis, because he did not file his petition until over a year after the discovery of this information, he has failed to meet the statutory time frame for presenting his claims.

## Order Summarily Dismissing the Petition

By order entered on August 30, 2019, the trial court summarily dismissed the Petition.  The court found that Petitioner "failed to state a colorable claim" and that the Petition "was filed outside the statute of limitations."  The court stated:

> Petitioner asserts he is entitled to coram nobis relief based upon the fact that [Ms. Patterson] testified at trial that she had not been made any promises or "deals" in exchange for her testimony.  He asserts that because,

4

after his trial, she was allowed to plead guilty for and received a favorable sentence; then, her trial testimony must have been false. He contends her plea agreement is new evidence which entitled him to a new trial. He provides no affidavit from [Ms. Patterson] either recanting her testimony or indicating she was promised a deal in exchange for her testimony. The [P]etition is further devoid of any proof establishing there was an agreement in place with the witness prior to her trial testimony. Therefore, even if the evidence were admitted, given that the plea occurred after the witnesses testimony and given there is no indication the witness had been promised any outcome in exchange for her testimony, [P]etitioner has failed to establish the result at trial may have been different based upon this information.

Moreover, [Ms. Patterson's] guilty plea was in March 2018 and [P]etitioner did not file his Petition for coram nobis relief until June of 2019. Thus, even considering the statute of limitations should have been tolled during the period of time that [P]etitioner was unaware [Ms. Patterson] would enter a plea, once the plea was entered it appears [P]etitioner was aware of this fact and failed to pursue relief until over a year after [Ms. Patterson's] plea was entered. Thus, even given the most favorable view of the timeline for filing his [P]etition for writ of error coram nobis based upon [Ms. Patterson's] plea, [P]etitioner failed to meet his statutory obligation to file such claims within a year.

Petitioner timely appeals.

## Analysis

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn.1999) (citation omitted). Coram nobis relief is confined to errors outside the record and "to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding." Tenn. Code Ann. § 40-26-105(b). If a defendant "was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence *may have* resulted in a different judgment, had it been presented at the trial." *Id.* (emphasis added).

In *State v. Vasques*, our supreme court held "that in a coram nobis proceeding, the trial judge must first consider the newly discovered evidence and be 'reasonably well satisfied' with its veracity." *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). The supreme court noted that "this interpretation upholds the traditional, discretionary

authority of our trial judges to consider the new evidence in the context of the trial, to assess its veracity and its impact upon the testimony of the other witnesses, and to determine the potential effect, if any, on the outcome." *Id.* at 527-28.

The trial court noted that the Petition was "devoid of any proof establishing there was an agreement in place with [Ms. Patterson] prior to her trial testimony." The documents attached to the Petition proved there was no agreement before she testified. Appendix A consisted of trial testimony of Ms. Patterson in which she flatly denied the existence any such deal. Exhibit E consisted of the response of the State to Petitioner's pro se motion, denying the existence of such a deal. Petitioner assumes that because Ms. Patterson pled guilty after his trial, she had a deal before she testified. Petitioner's assumption is not proof. Moreover, there is no proof that the testimony given by Ms. Patterson was false. Even if Ms. Patterson had testified that there was a favorable deal for her testimony, it is highly implausible that the jury might have reached a different conclusion based on Petitioner's admitting "to police that he shot the victim twice because he wanted to teach the victim a lesson." *Raymond Watison*, 2019 WL 4165282, at *16.

## Conclusion

Because we hold that the trial court properly dismissed the Petition, we do not need to address whether Petitioner's claim was barred by the statute of limitations. The judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

6